**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KELLY O'LEARY-BELL,

                *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

_____/

CIVIL ACTION NO. 2:16-cv-13864

DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 16, 19)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that O'Leary-Bell is not disabled. Accordingly, **IT IS RECOMMENDED** that O'Leary-Bell's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 19), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff O'Leary-Bell's ("O'Leary-Bell") claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. § 401 *et seq.* (Doc. 3).

The matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 19).

On September 24, 2013, O'Leary-Bell filed applications for DIB, alleging a disability onset date of May 24, 2012. (Tr. 132-45). The Commissioner denied her claim. (Tr. 70-84). O'Leary-Bell then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on July 16, 2015 before ALJ JoErin O'Leary. (Tr. 32-69).  The ALJ's written decision, issued September 24, 2015, found O'Leary-Bell not disabled. (Tr. 15-31). On September 15, 2016, the Appeals Council denied review, (Tr. 1-7), and O'Leary-Bell filed for judicial review of that final decision on October 31, 2016. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See*

*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:   If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to

3

last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two. 20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically

4

determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found O'Leary-Bell not disabled under the Act. (Tr. 18-27). At Step One, the ALJ found that O'Leary-Bell last met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since May 24, 2012, her application date. (Tr. 20). At Step Two, the ALJ concluded that the following impairments qualified as severe: affective disorders, anxiety disorders, degenerative disc disorder, and obesity. (*Id.*). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 21-22). Thereafter, the ALJ found that O'Leary-Bell had the residual functional capacity ("RFC") to perform light work, except:

> [C]laimant should never climb ladders, ropes, and scaffolds. She should never work around unprotected heights or dangerous moving mechanical part[s], due to medication side effects. The claimant is limited to performing simple, routine, and repetitive tasks not performed at a production-rate [p]ace. She is limited to making simple work related decisions. The claimant can only occasionally work with supervisors, coworkers, or the general public.

(Tr. 22). At Step Four, the ALJ found O'Leary-Bell incapable of performing her past relevant work. (Tr. 26). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that O'Leary-Bell can perform. (Tr. 26-27).

###### E.   Administrative Record

###### 1.   Medical Evidence

The Court has reviewed O'Leary-Bell's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

###### 2.   Application Reports and Administrative Hearing

###### i.   Function Report

O'Leary-Bell filled out a Function Report on October 14, 2013, which appears in the administrative record. (Tr. 190-202). Describing her conditions, she notes "[m]y illness makes it impossible for me to work. I have issues with [visibility], dizziness, drowsiness, and I have no control over my emotions. I cry all the time." (Tr. 190). In a typical day, "I try to do the babies. I rest a lot and I have my . . . son to take care of." (Tr. 191). As a result of her conditions, she could only sleep for approximately four hours. (*Id.*). They do not affect her ability to attend to personal care (*e.g.*, dressing, bathing, shaving, using the toilet, etc.). (*Id.*).

Medication reduced her appetite, and she would "[u]sually eat sandwiches" on a "daily" basis. (Tr. 192). She accomplished "basic household chores" twice per week, though she required reminders. (*Id.*). To get around, she rode in a car, but she also specified that "I do not go outside. I do not want to see people." (Tr. 193). Nor did she "like being alone" because she was "too anxious." (*Id.*). She drove only when necessary. (*Id.*). She sometimes shopped online for thirty- to sixty-minute increments. (*Id.*). Despite

her limitations, she retained the capacity to pay bills, count change, handle a savings account, and use a checkbook/money orders. (*Id.*).

Before her onset date, "I used to exercise. Now I watch TV and help my son with homework" every other day. (Tr. 194). "I can't walk or exercise due to dizziness and always being tired." (*Id.*). She regularly attended doctor's appointments, but otherwise remained alone at home. (*Id.*). "I do not go anywhere." (Tr. 195).

Prompted to mark abilities with which she encountered difficulty, she marked only lifting. (*Id.*). She could walk for a mile before needing a minute's rest, but she had "difficulty focusing" and followed verbal instructions better than written instructions. (*Id.*). She handled neither stress nor changes in routine well. (Tr. 196). In her closing remarks, she provided: "I did not intend to be filing for [Social Security]. I only had a few years left and I could have returned. Instead I decided to leave my career of 20 years for myself, my family, and my coworkers. My mood swings were unbearable and still after all the medication and therapy I still suffer every day from major depression and panic attacks." (Tr. 197).

O'Leary-Bell's husband—Bradley Bell—also filled out a Third-Party Function Report on October 13, 2013. The information it contains remains consistent in relevant respects with O'Leary-Bell's. (Tr. 178-85).

### ii.     O'Leary-Bell's Testimony at the Administrative Hearing

O'Leary-Bell opened her testimony noting that her request for electroconvulsive therapy had been approved as of the hearing, and her doctors merely had "to do some workup with a brain scan before they'll do the treatment." (Tr. 35). Her attorney then

requested "at least a couple of weeks to get a medical source statement from [O'Leary-Bell's] treating psychiatrist, Dr. Ingram." (Tr. 36). The ALJ agreed to "keep it at 30 days and see what happens." (Tr. 37).

Thereafter, O'Leary-Bell confirmed her diagnoses of depression, anxiety, and degenerative disc disease. (Tr. 40). "I don't think I can really bend and lift very much. Maybe ten pounds maybe." (Tr. 41). The limitations she encountered near the end of her career, however, were "primarily related to the bipolar and depression rather than the physical, . . ." (*Id.*). The ALJ observed records showing that O'Leary-Bell voluntarily submitted to hospitalization in January 2015, which she subsequently explained: "I just knew in my heart that I needed to remove myself from my home and just go seek treatment, some sort of help because I wasn't very – doing a very good job at home." (Tr. 42). Indeed, her child had Asperger's syndrome and "my husband and my parents help out a lot." (*Id.*). "[H]e just needs like me and my husband because he doesn't really – he doesn't interact with other people. So the main people in his life are me and my husband and my mom and dad that – that usually like take care of him." (Tr. 42-43). Ultimately, she hospitalized herself due to "worthless feelings and . . . hopelessness . . . ." (Tr. 44). "It helped me." (*Id.*).

At times, other treatment proved difficult because, as Dr. Ingram put it, "I was antidepressant resistant." (Tr. 46). This catalyzed O'Leary-Bell's interest in electroconvulsive therapy. (*Id.*).

Due to her alleged disability, O'Leary-Bell found herself taking time off so often that she ran out of sick time or vacation time and was driven to quit altogether. (Tr. 47).

Because she worked "third shift," she suffered "problems with insomnia." (Tr. 48). She later left for personal reasons. (Tr. 49). Her tendency to remain alone in her room caused certain problems for her son, but often she "could fix him a simple dinner" when he needed it. (Tr. 50. "[H]e likes to read stuff, so he . . . likes to be by himself, but he . . . knows that I'm there." (*Id.*). In day-to-day life, she continued to complete simple tasks, and to "maintain a clean home." (Tr. 51). Nevertheless, "I don't shop. I don't cut the grass." (Tr. 53). Her brother-in-law came over about once a week to "make[] sure that everything's good to go" with respect to needed repairs inside and outside the house. (Tr. 61). O'Leary-Bell only left the house "to get my medication" or to attend doctor's appointments. (Tr. 52-53). She also suffered concentration problems: "Like yesterday . . . I started to do a load of laundry and I completely just walked away from it. You know, with the washer door open and I just left it there, and I didn't even realize that I had not finished . . . putting the soap in . . . ." (Tr. 60).

### iii.    The VE's Testimony at the Administrative Hearing

After confirming the VE's qualifications, the ALJ posed her first hypothetical, asking the VE to assume an individual "limited to light exertional work" and who "could never climb ladders, ropes or scaffolds, and likewise, they should never work around unprotected heights or dangerous moving mechanical parts due to medication side effects. They would be limited to simple routine and repetitive tasks, not performed at a production rate pace. They'd be limited to simple work-related decisions. They could only occasionally work with supervisors, coworkers or the general public. With those restrictions, any past work?" (Tr. 65). The VE indicated that such a person could not

perform any of O'Leary-Bell's past work, but other opportunities existed in the "light, unskilled category," including: "packer"—with 334,000 national job availabilities—"inspector"—with 135,000 national job availabilities—and "janitor"—with 183,000 national job availabilities. (Tr. 65-66).

Faced with this answer, the ALJ proceeded to "add to that hypothetical all of those same restrictions, but in this instance, due to symptoms associated with the depression, the individual wouldn't be able to maintain regular attendance, and as a result, they'd be unpredictably absent more than four days per month. With that additional restriction, would there be any work?" (Tr. 66). The VE indicated that "[n]o work" would be available. (*Id.*).

In her third hypothetical, the ALJ proposed a "return to the restrictions of the first hypothetical but in this instance, we'll add that the individual would not be able to maintain concentration and attention, such that they would be, again, kind of unpredictably off task, in addition to normal breaks, about 25% of the time in an eight hour workday. With that additional restriction, any work?" (Tr. 66-67). The VE again confirmed that "no work with that restriction" existed in the job market. (Tr. 67).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who

10

are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting

objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*,

13

749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

    (i)     [D]aily activities;
    (ii)    The location, duration, frequency, and intensity of . . . pain;
    (iii)   Precipitating and aggravating factors;
    (iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
    (v)    Treatment, other than medication, . . . received for relief of . . . pain;
    (vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20

14

C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

O'Leary-Bell furnishes two arguments in the instant Motion: (1) the ALJ's Step Three determination as to Listing 12.04—as well as her RFC determination—lacks the support of substantial evidence; and (2) new and material evidence warrants remand under Sentence Six of § 405(g). I discuss each argument in turn.

### 1.    Step Three and RFC Determinations

O'Leary-Bell first targets the ALJ's discussion of Listing 12.04 at Step Three of the sequential analysis.    In order for a claimant to meet Listing 12.04, he or she must satisfy the following the criteria set forth in paragraphs A and B, or A and C:

A. Medical documentation of the requirements of paragraph 1 or 2:
  1. Depressive disorder, characterized by five or more of the following:
    a. Depressed mood;
    b. Diminished interest in almost all activities;
    c. Appetite disturbance with change in weight;
    d. Sleep disturbance;
    e. Observable psychomotor agitation or retardation;
    f. Decreased energy;
    g. Feelings of guilt or worthlessness;
    h. Difficulty concentrating or thinking; or
    i. Thoughts of death or suicide.
  2. Bipolar disorder, characterized by three or more of the following;
    a. Pressured speech;
    b. Flight of ideas;
    c. Inflated self-esteem;
    d. Decreased need for sleep;
    e. Distractibility;

      f. Involvement in activities that have a high probability of painful consequences that are not recognized; or

      g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning[:]

    1. Understand, remember, or apply information[.]

    2. Interact with others[.]

    3. Concentrate, persist, or maintain pace[.]

    4. Adapt or manage oneself[.]

OR

C. Your mental disorder in this listing category is 'serious and persistent;' that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder[;] and

    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life[.]

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.

In considering whether a claimant meets a listing, there is no "heightened articulation standard," and ALJs need not "spell[] out every consideration that went into" their conclusions. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Nor need the Step Three analysis sit squarely within the portion of an ALJ's decision expressly dedicated to its consideration. *See, e.g.*, *Snoke v. Astrue*, No. 2:10-CV-1178, 2012 WL 568986, at *6 (S.D. Ohio Feb. 22, 2012), *report and recommendation adopted,* No. 2:10-CV-01178, 2012 WL 1058982 (S.D. Ohio Mar. 28, 2012) ("[T]he Sixth Circuit has implicitly acknowledged that a court must read the ALJ's step-three analysis in the context of the entire administrative decision, and may use other portions of a decision to justify the ALJ's step-three analysis." (citing *Bledsoe*, 165 F. App'x at 411)).

16

The ALJ at issue here "found [O'Leary-Bell] had only mild restriction of activities of daily living, moderate difficulty in social functioning and concentration, persistence or pace, and no episodes of decompensation of extended duration." (Doc. 16 at ID 426). According to O'Leary-Bell, her discussion on this topic proved "less than cursory" and extolled a rationale "contrary to the single report she claimed to rely on." (Doc. 16 at ID 426-27). In response, the Commissioner notes that O'Leary-Bell made no argument as to the paragraph A criteria, thereby waiving her argument as to Listing 12.04. (Doc. 19 at ID 446). Alternatively, the Commissioner contends that substantial evidence supported the ALJ's Step Three findings. (Doc. 19 at ID 447-52).

At the outset, I find that O'Leary-Bell's failure to address the paragraph A criteria of Listing 12.04 does not waive her argument thereto. "Paragraph 'A' criteria deals with whether the diagnosis is present and the paragraph 'B' criteria deals with the severity of the impairment." *Baker v. Comm'r of Soc. Sec.*, No. CIVA08-15216, 2009 WL 6346545, at *10 (E.D. Mich. Dec. 31, 2009), *report and recommendation adopted,* No. 08-15216, 2010 WL 1463137 (E.D. Mich. Apr. 13, 2010); *accord, e.g.*, *Gushen v. Comm'r of Soc. Sec.*, No. 16-CV-10003, 2017 WL 1807605, at *5 (E.D. Mich. Feb. 23, 2017) ("[T]he SSA [must] consider the Paragraph B functional limitations for each listing in light of the *specific mental disorder in Paragraph A of that listing*. Thus, in analyzing whether Gushen's limitations met Paragraph B of Listing 12.04 . . . the ALJ was required to consider the functional limitations that were the result of affective disorders."). O'Leary-Bell does not challenge the ALJ's Step Two determination—which considered "affective disorders" and "anxiety disorders" to be severe impairments—but his adverse finding that

17

these disorders caused neither marked nor extreme limitation in any paragraph B criterion. As such, the argument is not waived.

Nonetheless, the ALJ rested his Step Three findings on substantial evidence. Contrary to O'Leary-Bell's assertions, the ALJ explicitly granted Dr. DeLoach's medical opinion "significant weight" because there was no "contrary opinion of record from a medical source." (Tr. 25). Of some import, O'Leary-Bell does not challenge the ALJ's weight assignment in this respect, waiving any argument thereto. *See Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 686 (6th Cir. 2007) ("Stiltner waived any argument regarding Dr. Odell by not including it in her brief."). Moreover, the ALJ's findings throughout his opinion buttress the Step Three excerpt directly addressing the paragraph B criteria of Listing 12.04, including: (a) O'Leary-Bell's "essentially normal" mental status examinations, with only moderate restriction in concentration, persistence, or pace. (Tr. 21, 24); (Tr. 263, 267, 283, 290, 302, 314, 346, 353) (describing O'Leary-Bell as having logical thought processes, cooperative, speaking normally, alert and oriented, and/or without suicidal ideation). (b) O'Leary-Bell's mild restriction in activities of daily living due to her  ability to complete basic housework, make simple meals, and shop online.[1] (Tr. 21); (Tr. 50-51, 179-80, 191-92, 249, 342) (describing O'Leary-Bell as

---

[1] O'Leary-Bell makes much ado about an error in the ALJ's opinion, which says that she shopped online *and* in person. In fact, O'Leary-Bell never indicated that she shopped in person. This misstatement, however, does nothing to undermine the ALJ's well-reasoned decision, which rested on many other valid evidentiary items. *Cf., e.g., Reams v. Comm'r of Soc. Sec.*, No. 12-CV-14269, 2013 WL 4613281, at *13 (E.D. Mich. Aug. 29, 2013) (discounting a similar argument where the ALJ misstated the claimant's GAF score because "any decision not to rely on the GAF score is of little consequence and would not undermine a decision supported by substantial evidence"); *Wroblewski v. Comm'r of Soc. Sec.*, No. 07-12437, 2009 WL 891730, at *1 (E.D. Mich. Mar. 31, 2009) (upholding an ALJ's weight-assignment despite his inaccurate

retaining the capacity for personal care, an ability to make sandwiches, and to accomplish basic household tasks). And (c) O'Leary-Bell's moderate restriction in social functioning due to her regular attendance at doctor's appointments and ability to get along with others. (Tr. 21); (Tr. 289) (describing O'Leary-Bell as able to "interact appropriately" with others during her hospitalization); (Tr. 195-96) (indicating that O'Leary-Bell got along well with family, friends, and authority figures). Substantial evidence bolsters these findings.

O'Leary-Bell's eighteen-page brief includes little citation to the record—blaming "time and space limitations"—despite the fact that this Court customarily allows briefs up to twenty-five pages in length. (Doc. 16 at ID 429). The citations O'Leary-Bell does include in her memorandum draw heavily from her own testimony, which the ALJ found "not entirely persuasive." (Tr. 24). As he explained, the record contained evidence attesting to the effectiveness of O'Leary-Bell's treatment through medication and hospitalization, as well as the fact that "she was previously able to work in spite of these conditions" and the "record does not indicate that the claimant's symptoms have significantly worsened since that time." (Tr. 25). The record validates the ALJ's findings. *E.g.*, (Tr. 261, 264, 266, 281, 283, 286, 321, 325) (medication helped O'Leary-Bell); (Tr. 316, 319) (O'Leary-Bell endured mental health issues for decades before applying for

---

statement because "his misstatement of the record did not . . . undermine in any significant way the reasons given by the ALJ for this determination"); *Geml v. Comm'r of Soc. Sec.*, No. 00-CV-70202, 2001 WL 85875, at *2 (E.D. Mich. Jan. 4, 2001) (adopting "the magistrate judge's finding that although the ALJ's decision incorrectly noted that Geml did not describe needing help taking care of her children, this misstatement did not undermine the ALJ's conclusion, especially when considered in light of the substantial evidence that Geml was not disabled."). Any error on this count was harmless.

DIB).  In addition, O'Leary-Bell does not challenge the ALJ's credibility determination, waiving her argument thereto. Put simply, O'Leary-Bell's argument fails to persuade this Court that the ALJ did not rely on substantial evidence in reaching his conclusions.

This fact equally undermines O'Leary-Bell's nonspecific RFC argument. Her memorandum grafts elements of her Step Three argument onto an RFC argument without indicating what additional limitations the ALJ should have found, and without meaningfully contesting either the evidence she relied on—such as Dr. DeLoach's opinion—or the evidence she discounted—such as O'Leary-Bell's credibility. *See, e.g.*, *Carsten v. Comm'r of Soc. Sec.*, No. 15-14379, 2017 WL 957455, at *7 (E.D. Mich. Feb. 23, 2017), *report and recommendation adopted,* No. 15-14379, 2017 WL 951244 (E.D. Mich. Mar. 10, 2017) ("Plaintiff has the burden of demonstrating that his RFC is insufficiently restrictive." (citing *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994))); *cf. Taylor v. Colvin*, No. CV 115-180, 2016 WL 7626705, at *6 (S.D. Ga. Dec. 6, 2016), *report and recommendation adopted,* No. CV 115-180, 2017 WL 29678 (S.D. Ga. Jan. 3, 2017) ("At best, Plaintiff attempts to bootstrap an argument about subjective complaints of physical pain into her argument about the question presented to the VE . . . but she offers no specific argument or citations to the record about how the ALJ's analysis of her subjective complaints of physical pain were not accounted for in the functional limitations in the ALJ's RFC determination.").

For these reasons, O'Leary-Bell's argument on this ground remains unpersuasive as the ALJ's findings are supported by substantial evidence.

####        2.        Sentence Six Remand

In her last argument, O'Leary-Bell seeks a remand under Sentence Six of 42 U.S.C. § 405(g) to consider an opinion from Dr. Ingram, her treating physician. (Doc. 16 at ID 432-35). She observes that the record lacks an opinion from Dr. Ingram, and that she requested this opinion immediately following her hearing but did not receive it until January 2016, months after the ALJ issued her decision. (Doc. 16 at ID 433). "The statement and new treatment records were immediately submitted to the Appeals Council and added to the record." (*Id.*). In her opinion, the ALJ noted "that she requested such an opinion, though she did not wait to receive it before issuing her decision." (Doc. 16 at ID 435) (citing (Tr. 25)).

Remand under Sentence Six is not appropriate unless the claimant shows: (1) "the evidence at issue is both 'new' and 'material,'" and (2) "there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Evidence is new only if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). It is material only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). And one shows good cause by "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing

*Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam)). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Dr. Ingram began treating O'Leary-Bell in January 2015, nearly nine months before her hearing in September 2015, and the ALJ kept the record open an additional thirty days past the hearing in anticipation of receiving an opinion from him. O'Leary-Bell failed to acquire the opinion in time. This does not constitute 'good cause' for failure to acquire the opinion earlier. *Accord Behmlander v. Comm'r of Soc. Sec.*, No. 12-CV-14424, 2013 WL 5516456, at *7 (E.D. Mich. Oct. 3, 2013) ("'[T]here is absolutely no statutory or decisional authority for her unstated, but unmistakable, premise that the alleged incompetence of [the plaintiff's] first attorney constitutes 'good cause' in this context.'" (quoting *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002))).

Moreover, although O'Leary-Bell correctly points out that Dr. Ingram identified numerous areas of marked limitation in functioning, (Doc. 16 at ID 434), she fails to convince this Court that his opinion is, in fact, material. As the Commissioner notes, Dr. Ingram began treating O'Leary-Bell in January 2015; his notes are only directly relevant to approximately nine of the thirty-nine month interval between the hearing and her alleged onset date. While certainly not fatal to materiality, this fact detracts from the opinion's significance. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (discounting the materiality of evidence "pertain[ing] to a time

outside the scope of our inquiry"); *cf. Dragoiu v. Comm'r of Soc. Sec.*, No. 13-14786, 2015 WL 1245907, at *10 (E.D. Mich. Mar. 18, 2015) ("'Evidence which reflected applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began. Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition.'" (quoting *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 712 (6th Cir. 1988))). In addition, it is a check-box opinion—containing almost zero accompanying analysis—with findings directly contrary to the well-supported opinion of Dr. DeLoach. *See Massey v. Colvin*, No. 3:16-CV-00887, 2017 WL 56629, at *7 (M.D. Tenn. Jan. 5, 2017), *report and recommendation adopted sub nom., Massey v. Soc. Sec. Admin.*, No. 3:16-RCV-R00887, 2017 WL 1366918 (M.D. Tenn. Jan. 20, 2017) ("Absent any explanation for these limitations, there is no reasonable probability that the Commissioner's unfavorable disability determination would change where substantial evidence supports the current decision."); *cf., e.g., Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (citing cases recognizing "that the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence").

### H.     Conclusion

For the reasons stated above, the Court **RECOMMENDS** that McDonald's Motion for Summary Judgment, (Doc. 16), be **DENIED**, that the Commissioner's Motion, (Doc. 17), be **GRANTED**, and that this case be **AFFIRMED**.

III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 23, 2017                          S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge


# **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date
through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 23, 2017                          By s/Kristen Castaneda
                                               Case Manager