UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KELLY O'LEARY-BELL, | Case No. 16-13864 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| COMMISSIONER OF SOCIAL SECURITY, | U.S. MAGISTRATE JUDGE |
| Defendant. | PATRICIA T. MORRIS |

**ORDER ADOPTING IN PART REPORT & RECOMMENDATION [20]; OVERRULING PLAINTIFF'S OBJECTIONS [21]; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [16]**

Plaintiff Kelly O'Leary-Bell seeks judicial review of the decision of an Administrative Law Judge ("ALJ") denying her application for disability benefits. Plaintiff filed a Motion for Summary Judgment [16] on May 30, 2017. Defendant filed a Motion for Summary Judgment [19] on June 15, 2017. On August 23, 2017, the Magistrate Judge issued a Report and Recommendation [20] ("R&R") recommending that the Court grant Defendant's Motion and deny Plaintiff's Motion. Plaintiff filed Objections to the R&R [21] on September 6, 2017. Defendant filed its Response [22] on September 19, 2017.

For the reasons stated below, the Court **ADOPTS in part** the R&R [20]. Plaintiff's Objections to the R&R [21] are **OVERRULED**. Defendant's Motion

for Summary Judgment [19] is **GRANTED**. Plaintiff's Motion for Summary Judgment [16] is **DENIED**.

**FACTUAL BACKGROUND**

The Magistrate Judge summarized the record as follows:

> On September 24, 2013, O'Leary-Bell filed applications for DIB, alleging a disability onset date of May 24, 2012. (Tr. 132-45). The Commissioner denied her claim. (Tr. 70-84). O'Leary-Bell then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on July 16, 2015 before ALJ JoErin O'Leary. (Tr. 32-69). The ALJ's written decision, issued September 24, 2015, found O'Leary-Bell not disabled. (Tr. 15-31). On September 15, 2016, the Appeals Council denied review, (Tr. 1-7), and O'Leary-Bell filed for judicial review of that final decision on October 31, 2016. (Doc. 1) . . . .
>
> **D.   ALJ Findings**
>
> Following the five-step sequential analysis, the ALJ found O'Leary-Bell not disabled under the Act. (Tr. 18-27). At Step One, the ALJ found that O'Leary-Bell last met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since May 24, 2012, her application date. (Tr. 20). At Step Two, the ALJ concluded that the following impairments qualified as severe: affective disorders, anxiety disorders, degenerative disc disorder, and obesity. (*Id.*). **The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three.** (Tr. 21-22) (emphasis added). Thereafter, the ALJ found that O'Leary-Bell had the residual functional capacity ("RFC") to perform light work, except . . . .

At Step Four, the ALJ found O'Leary-Bell incapable of performing her past relevant work. (Tr. 26). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that O'Leary-Bell can perform. (Tr. 26-27).

**E. Administrative Record** . . . .

    **2. Application Reports and Administrative Hearing**

        **i. Function Report**

O'Leary-Bell filled out a Function Report on October 14, 2013, which appears in the administrative record. (Tr. 190-202). Describing her conditions, she notes "[m]y illness makes it impossible for me to work. I have issues with [visibility], dizziness, drowsiness, and I have no control over my emotions. I cry all the time." (Tr. 190). In a typical day, "I try to do the babies. I rest a lot and I have my . . . son to take care of." (Tr. 191). As a result of her conditions, she could only sleep for approximately four hours. (*Id.*). They do not affect her ability to attend to personal care (*e.g.*, dressing, bathing, shaving, using the toilet, etc.). (*Id.*).

Medication reduced her appetite, and she would "[u]sually eat sandwiches" on a "daily" basis. (Tr. 192). She accomplished "basic household chores" twice per week, though she required reminders. (*Id.*). To get around, she rode in a car, but she also specified that "I do not go outside. I do not want to see people." (Tr. 193). Nor did she "like being alone" because she was "too anxious." (*Id.*). She drove only when necessary. (*Id.*). She sometimes shopped online for thirty- to sixty-minute increments. (*Id.*). Despite her limitations, she retained the capacity to pay bills, count change, handle a savings account, and use a checkbook/money orders. (*Id.*).

Before her onset date, "I used to exercise. Now I watch TV and help my son with homework" every other day. (Tr. 194). "I can't walk or exercise due to dizziness and always being tired." (*Id.*). She regularly attended doctor's appointments, but otherwise remained alone at home. (*Id.*). "I do not go anywhere." (Tr. 195). Prompted to mark abilities with which she encountered difficulty, she marked only lifting. (*Id.*). She could walk for a mile before needing a minute's rest, but she had "difficulty focusing" and followed verbal instructions better than written instructions. (*Id.*). She handled neither stress nor changes in routine well. (Tr. 196). In her closing remarks, she provided: "I did not intend to be filing for [Social Security]. I only had a few years left and I could have returned. Instead I decided to leave my career of 20 years for myself, my family, and my coworkers. My mood swings were unbearable and still after all the medication and therapy I still suffer every day from major depression and panic attacks." (Tr. 197) . . . .

### ii. O'Leary-Bell's Testimony at the Administrative Hearing

O'Leary-Bell opened her testimony noting that her request for electroconvulsive therapy had been approved as of the hearing, and her doctors merely had "to do some workup with a brain scan before they'll do the treatment." (Tr. 35). Her attorney then requested "at least a couple of weeks to get a medical source statement from [O'Leary-Bell's] treating psychiatrist, Dr. Ingram." (Tr. 36). The ALJ agreed to "keep it at 30 days and see what happens." (Tr. 37).

Thereafter, O'Leary-Bell confirmed her diagnoses of depression, anxiety, and degenerative disc disease. (Tr. 40) . . . . The limitations she encountered near the end of her career, however, were "primarily related to the bipolar and depression rather than the physical, . . ." (*Id.*). The ALJ observed records showing that O'Leary-Bell voluntarily submitted to hospitalization in January 2015,

which she subsequently explained: "I just knew in my heart that I needed to remove myself from my home and just go seek treatment, some sort of help because I wasn't very – doing a very good job at home." (Tr. 42). Indeed, her child had Asperger's syndrome and "my husband and my parents help out a lot." (*Id.*) . . . . Ultimately, she hospitalized herself due to "worthless feelings and . . . hopelessness . . . ." (Tr. 44). "It helped me." (*Id.*).

At times, other treatment proved difficult because, as Dr. Ingram put it, "I was antidepressant resistant." (Tr. 46). This catalyzed O'Leary-Bell's interest in electroconvulsive therapy. (*Id.*).

Due to her alleged disability, O'Leary-Bell found herself taking time off so often that she ran out of sick time or vacation time and was driven to quit altogether. (Tr. 47). Because she worked "third shift," she suffered "problems with insomnia." (Tr. 48). She later left for personal reasons. (Tr. 49). Her tendency to remain alone in her room caused certain problems for her son, but often she "could fix him a simple dinner" when he needed it. (Tr. 50) . . . . In day-to-day life, she continued to complete simple tasks, and to "maintain a clean home." (Tr. 51). Nevertheless, "I don't shop. I don't cut the grass." (Tr. 53) . . . . O'Leary-Bell only left the house "to get my medication" or to attend doctor's appointments. (Tr. 52-53). She also suffered concentration problems . . . .

### STANDARD OF REVIEW

The Court reviews objections to a Magistrate Judge's R&R on a dispositive motion *de novo. See* 28 U.S.C. § 636(b)(1)(c).

Judicial review of a decision by a Social Security ALJ is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402

U.S. 389, 401 (1971). The ALJ's factual findings ". . . are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005) (internal citation and quotation marks omitted). However, so long as the ALJ's conclusion is supported by substantial evidence, a court must ". . . defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

## ANALYSIS

The Court construes Plaintiff's brief as objecting to two of the R&R's conclusions: 1) the ALJ's findings in Step Three, Listing 12.04 were supported by

substantial evidence; and 2) new and material evidence did not justify remand under Sentence Six.[1]

### I. The ALJ's findings in Step Three, Listing 12.04 were supported by substantial evidence

Plaintiff challenges the ALJ's findings under Listing 12.04 (depressive, bipolar and related disorders) that she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. As part of its analysis under Step Three, the ALJ assessed whether Plaintiff satisfied the criteria set forth in paragraphs A and B or paragraphs A and C of the Regulation. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

In order for the ALJ to evaluate how the claimant's mental disorder limits her functioning, paragraph B provides the following assessment criteria: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* The ALJ:

> evaluate[s] the effects of [claimant's] mental disorder on each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. To satisfy the paragraph B criteria, [claimant's] mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning.

*Id.*

---

[1] Plaintiff did not label her objections according to the instructions set forth in the R&R.

In this case, the ALJ found that Plaintiff has: mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and experienced no episodes of decompensation of extended duration. The ALJ concluded that the paragraph B criteria were not satisfied because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation." Tr. 21.

The Court agrees with the Magistrate Judge's conclusion that the ALJ rested its Step Three findings on substantial evidence and adopts that portion of the R&R.

However, the Court declines to adopt the part of the R&R which concludes that Plaintiff waived her argument challenging the weight the ALJ assigned to Dr. DeLoach's medical opinion. While Plaintiff did not explicitly challenge the ALJ's decision to afford significant weight to Dr. DeLoach's opinion, a review of Plaintiff's Motion [16] shows that she attempted to develop this argument throughout her brief. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (explaining that only "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Nevertheless, Plaintiff fails to demonstrate how the weight afforded to Dr. DeLoach's opinion undermines the R&R's ultimate conclusion. Plaintiff blankly asserts that the ALJ "wholly and uncritically adopted Dr. DeLoach's unsupported

opinion." [Dkt. #21 at 2]. But the ALJ gave the opinion "significant weight" because "it is consistent with the record as a whole . . . . [and] there is not contrary opinion of record from a medical source." Tr. 25.

Plaintiff's objection to the Step Three analysis primarily criticizes the ALJ and the Magistrate Judge for their evaluations of the evidence in the record. However, it is not for this Court to "re-weigh the evidence" or "substitute its judgment for that of the ALJ" upon its review of the ALJ's decision. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

Additionally, Plaintiff essentially submits that the ALJ set forth its "entire rationale" for its Step Three findings in three short paragraphs. *See* Tr. 21. But, Plaintiff fails to recognize that in assessing the paragraph B criteria, the ALJ is not required to "spell[] out every consideration that went into the step three determination." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *see also Snoke v. Astrue*, No. 2:10-CV-1178, 2012 WL 568986, at *6 (S.D. Ohio Feb. 22, 2012), *report and recommendation adopted,* No. 2:10-CV-01178, 2012 WL 1058982 (S.D. Ohio Mar. 28, 2012) ("[T]he Sixth Circuit has implicitly acknowledged that a court must read the ALJ's step-three analysis in the context of the entire administrative decision, and may use other portions of a decision to justify the ALJ's step-three analysis."). Accordingly, Plaintiff's objection is overruled.

## II. Remand under Sentence Six of 42 U.S.C. § 405(g) is not warranted

Remand under Sentence Six is appropriate "only upon a showing that there is new evidence which is material and that there is a good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

The Sixth Circuit has explained that "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding[.]" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted). Furthermore, evidence is "material only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* at 357 (internal quotation marks omitted). Finally, Plaintiff may show good cause by "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (internal quotation marks omitted).

Plaintiff argues that the Court should reject the R&R's conclusion that Plaintiff is not entitled to remand because she has sufficiently demonstrated: 1) "good cause" for failing to present Dr. Ingram's opinion; and 2) that Dr. Ingram's opinion is material.

Plaintiff argues that the Court should not adopt the Magistrate Judge's finding on "good cause" because the R&R did not "state any action Plaintiff could have taken to compel Dr. Ingram to respond to the request for his opinion more quickly." [Dkt. #21 at 11].

This argument is without merit. Plaintiff bears the burden of "detailing the obstacles that prevented the admission of the evidence." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012). Although Dr. Ingram had been treating Plaintiff since January 2015, Plaintiff did not ask for an opinion until *after* the July 2015 hearing. Tr. 36. Moreover, the ALJ afforded Plaintiff an additional 30 days following the hearing to submit Dr. Ingram's opinion, but Plaintiff did not submit Dr. Ingram's opinion until January 2016. Accordingly, the Court overrules Plaintiff's objection on "good cause" and adopts the R&R on this issue.

Plaintiff further argues that Dr. Ingram's opinion was material because the "substance of Dr. Ingram's statement regarding the Plaintiff's specific limitations would certainly have produced a different decision" [and Dr. Ingram] "thoughtfully rated the Plaintiff's limitations in a number of functional areas." [Dkt. #21 at 12].

The R&R concluded that Dr. Ingram's opinion was not material, in part, because his "notes are only directly relevant to approximately nine of the thirty-nine month interval between the hearing and the alleged onset date." [Dkt. #20 at

22]. On the issue of materiality, the Magistrate Judge further considered the fact Dr. Ingram's opinion was merely a "check-box opinion," with no accompanying analysis.

The Court need not, and does not, rule on whether Plaintiff has satisfied the materiality prong by establishing that the inclusion of Dr. Ingram's opinion would have produced a different result. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (explaining that "the party seeking a remand bears the burden of showing that these two requirements [(i) materiality and (ii) good cause] are met."). Because Plaintiff has not demonstrated "good cause" for failing to present the ALJ with Dr. Ingram's opinion in a timely manner, her objection is overruled. The Court declines to adopt the R&R on the issue of materiality.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the R&R [20] of the Magistrate Judge is hereby **ADOPTED in part**[2] and is entered as the findings and conclusions of the Court.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [21] are **OVERRULED**.

---

[2] The Court also makes note of what it perceives as an error in the R&R. To the extent that the R&R recommends that the Court deny "McDonald's" Motion for Summary Judgment, [Dkt. #20 at 23], the Court strikes "McDonald" and replaces it with "O'Leary-Bell."

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [19] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [16] is **DENIED**.

**SO ORDERED**.

                                          s/Arthur J. Tarnow
                                          Arthur J. Tarnow
Dated: January 19, 2018         Senior United States District Judge